Memorandum for the Motion for Reconsideration

The court appears to have clearly errored in a number ways including substituting its judgment for that of the agency, misapplied law and other clear errors related to fact finding. The decision of the court amounts to a rubber stamping of the NEPA process.

The plaintiff submitted detailed FEIS comments (AR1_000889-000895). It included a number of issues and changes to the original alternative (AR1_002388-002390). The only response on the record between the submission of these comments and the record of decision is (AR1-000423-000426). The response includes one reason for why these issues and changes were not reasonable alternatives. The reason given was that they evaluated two heavy rail alternatives and determined them to be unreasonable alternatives. The defendants could have offered reasoned explanations as to why an issue is outside the bounds of the analysis and still be considered unreasonable, or it could have disputed the validity of any of the issues, but it did none of these things.

According to question 29a of the Council on Environmental Quality's Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations (46 Fed Reg 18026, March 1981), the proper response when specific issues are raised to the NEPA analysis, such as those offered by the plaintiff, require the agency "to respond in a substantive and meaningful way" The defendants failed to provide this.

Since the defendants have offered no reasonable explanation as to why the plaintiff's alternatives are similar, the court cannot substitute its judgment for that of the agency. An example of this is that the court has said that the defendants are disputing the plaintiff's analysis (ECF 55 pg 54), but there is no evidence of this in the defendants responses. Another instance is when the court tries to complete an incomplete reasoned analysis (ECF 55 pg 57). While cost are part of a reasoned analysis, it is an incomplete reasoned analysis because the reason for the determination of the costs were not

included as part of the analysis. The plaintiff has used the evidence that was before the agency at the time the record of decision was made to demonstrate that the explanation given by the defendants runs counter to the facts before the agency. This is the very definition of arbitrary and capricious, yet the court has found exactly the opposite finding. This is a clear error of the court.

In its judgment, the court has indicated that "In resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party" (ECF 55 pg 34) and referenced several court decisions. Yet in its opinion, in practically every instance where there was a dispute resolved, this dispute was resolved in the favor of the moving party rather than the non-moving party. This is a clear error which leads to manifest injustice with regard to its judgment.

The court has also indicated that "[C]ourts are to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." "Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes 'a rational connection between the facts found and the choice made.'" (ECF 55 pg 32) Yet the explanations given reference the motions before the court. These motions were not available to the agency at the time the record of decision was made.

## Instances of clear errors and misapplied law

The first clear error is the categorization of the plaintiff's disputes as being immaterial to the case (ECF 55 pg 38). The court incorrectly interpreted the plaintiff's indication that not all of the disputes were material. The plaintiff made this statement in reference to his disputing everything the defendants had stated (ECF 47-1 first paragraph). The listed disputes excluded all of the disputes that were not material to the case.

The first instance of misapplied law is one of fact vs law. The court has indicated that the "review of the administrative record is primarily a legal question..." (ECF 55 pg 31 In the typical case,

most parties agree on the facts given that the facts are limited to the administrative record. These cases are primarily a legal question. There are secondary issues related to findings of fact. When they cannot be resolved, the court must also become a trier of fact. These cases cannot be resolved simply as a matter of law because there are also matters of fact to resolve. The ninth circuit has provided a guide to this issue that is included as an appendix to this motion.

An example of this mixed question of law and fact is the use of the January 7 2009 MTA letter (AR2_061957-061958). The court used this letter to formulate its opinion (ECF 55 pg 42) that the MTA met the NEPA requirements (law). The letter was listed in the plaintiff's opposition motion (ECF 47-1 dispute 8) and in it he disputed the validity of the letter based on two future dates in the letter (fact). This letter is dated two days after the end of the DEIS comment period (fact). In the letter it states that "As you are surely aware, Governor O'Malley's announced the Red Line Locally Prefered Alternative (LPA) on August 4, 2009 as Alternative 4C, with some modifications. ... The Baltimore Regional Transportation Board ... approved the Red Line LPA on September 22." (fact)

There are only two reasonable interpretations as to why a letter dated January 7 2009 would indicate that the plaintiff was "surely aware" of these two events that occurred 7-8 months in the future. One is conspiratorial, the MTA preordained the answer that 4C was going to be the answer before the process even started (unlikely, but is consistent with events) or it was a rough draft of the April 5, 2010 letter (AR2_054355-054356) that was in the MTA's files. Given the similarity between the two letters I believe that the rough draft interpretation is the more reasonable, but would not object to the former. Using the letter as being valid resolves this conflict in favor of the moving party and indicates a clear error of the court.

The next clear error of the court is the rubber stamping of the defendants claim that the plaintiff's attempts to redefine the purpose of the project (ECF 55 pg 47 and 48). This determination was not made on the record. The defendants made a straw man argument in the motions for summary

CUTONILLI v FTA and MTA                                    Page 4 of 15

judgment that the plaintiff's proposals address transit issues outside the study corridor. The argument does not redefine the project; it ensures that the purpose and need of the project is actually followed. The purpose and need of the project is not limited to east-west commuters. One of the needs of the project is to connect to the Metro, Light Rail and MARC lines, all of which exit the corridor in a similar manner to the bus transfers the plaintiff is referring. Why do these connections meet the need of the project, yet the bus transfers do not? Eliminating transfers are an important part of the purpose and need of the project as stated in the purpose and need of the project. It is a fact that all of the transfers occur within the study corridor. They occur at or near each of the transit stops. While this was not explicitly stated, it is an inference based on the fact that the 70% figure is based on the actual ridership of the Red Line transferring to/from the Red Line to other transit lines that take them outside the corridor. Additionally the quickway model would utilize existing bus infrastructure outside the study corridor, negating any need for improvements outside the study corridor. The LPA also has modifications to bus services both inside and outside the corridor (AR1_001410-001411) that are of the same types of changes that would be needed with a quickway type system. Since these inferences were made in favor of the moving party, it constitutes a clear error. It was also not made on the record. It is also a clear error that the court did not look at the other aspects of the purpose and need of the project.

The next clear error of the court is the consideration of overlap (ECF 55 pg 48). The plaintiff agrees that transfers are one of the primary concerns of the defendants. In the detailed analysis, the plaintiff demonstrated that the amount of transfers with his proposal are likely less than the LPA when the quickway BRT mode is overlapped with the extension of the metro. This indicates that the plaintiff's analysis is outside the bounds of the analysis conducted by the defendants. The second heavy rail alternative did not have any overlap. One reason that was cited for rejecting the plaintiff's proposal was because of the supposed increase in transfers. When the plaintiff's proposals are evaluated without the

quickway mode and overlap you get a very high number of transfers. The court resolved this conflict in favor of the moving party, a clear error.

The next clear error of the court is in the determination that underground stations do not distinguish the plaintiff's alternatives from the analyzed other analyzed alternatives (ECF 55 pg 50). The defendants appear to have misconstrued what the plaintiff has said. The large expensive tunnel they are referring to was the original size tunnel. Based on the feedback from the defendants, the plaintiff proposed reducing the size of the tunnel to the size the defendants analyzed as part of the DEIS. No enlarged tunnel is needed to locate the stations on the surface. The plaintiff discussed that the cost for putting the stations on the surface is less than or equal to an underground station. The court resolved this conflict in favor of the moving party, a clear error. The court also used information (email) not present at the time the record of decision was made, another clear error.

The next misapplication of the law is based the agencies obligation to evaluate alternatives (ECF 55 pg 51). 40 CFR 1502.14(a) requires an evaluation of all reasonable alternatives and a brief description of any alternative that is not reasonable. This indicates that the fundamental goal to be well informed is based on the evaluation of various alternatives. When the EIS ignores various alternatives it creates an uninformed decision making process violating the goals of the NEPA process. Alternatives that fall within the range of other alternatives do not need an additional analysis. Stating that a reasonable alternative exists without specifying anything as to what that alternative actually entails does not need an additional analysis.

In the detailed analysis section of the plaintiff's opposition motion, the plaintiff presented detailed facts that were available to the defendants at the time of the Record of Decision (ECF 47-1 detailed appendix). These facts demonstrate that the cost, ridership and transfers of one of the plaintiff's proposed alternatives falls outside the bounds of the heavy rail analysis. It also demonstrated that the cost ridership and number of transfers were consistent with the LPA implying that it was likely a

reasonable alternative. (Facts dispute the agency's conclusions) The court appears to have rejected this analysis in favor of the moving party. This is a clear error of the court.

The court appears to have misunderstood the plaintiff's challenge to the scientific integrity of the project (ECF 55 pg 52). The plaintiff has not challenged the scientific integrity of any of the technical reports that were in the Environmental Impact Statements. In fact, the plaintiff has used them to determine the lack of scientific integrity of the defendants' responses to the plaintiff's alternatives. This indicates that the analysis conducted by the defendants is in conflict with other analysis they conducted. There are no competing experts nor is this analysis at the frontiers of science. The defendants explanations sound like reasoned analysis on the surface, but are incomplete because the explanation does not fully connect the facts with the explanation given or are straw man arguments that do not really apply to the situation .It should be noted that the court found that there were no references to the underlying technical analysis in the defendants responses (See issue 5a), which requires such references, but sided with the moving party by ignoring the scientific integrity requirements. This is a clear error of the court.

The court appears to have misunderstood the law about how to deal with refinements and new information (ECF 55 pg 54). According to Vermont Yankee Nuclear Power Corp v NRDC (435 US 519, 552-553 1978) the concept of "alternatives" is an evolving one, requiring the agency to explore more or fewer alternatives as they become better known and understood. If this new information or refinements leads to new reasonable alternatives that were not evaluated as part of the original environmental impact statement then a supplemental environmental impact statement is required. Any information that is provided up to the record of decision is valid for use in this determination.

The issue related to the restart of the NEPA process and a never ending NEPA process (ECF 55 pg 54-55) refer to information obtained after the NEPA process has ended (after the record of decision). The court has used instances of information obtained after the NEPA process to evaluate this

case. This is a clear error of the court.

The court found the defendants' responses satisfied the NEPA requirements, yet the plaintiff disputed both emails cited (ECF 55 pg 57). One of the reasoned for the dispute was that it occurred after the Record of Decision (see previous paragraph for the reasons why that is inappropriate). The other occurred before the plaintiff provided a much more detailed response. The court ruled in favor of the moving party in this case, a clear error. It also failed to evaluated the published responses to determine if they were adequate, another clear error of the court.

The court turned an issue of whether missing information was evaluated into a fly-specking issue (ECF 55 pg 57). The court substituted its judgment for that of the agency to do this. The record indicates that there were multiple copies of the plaintiff's written comments (disputed fact), which combined with the fact that they did not include them in FEIS, infers that the defendants likely misfiled the plaintiff's written comments. When the plaintiff notified the defendants of this issue, the only response was that they evaluated everyone else's comments. The defendants could have acknowledged that they evaluated them, but chose not to provide this response. Instead the court substituted its judgment and provided a reason and failed to evaluate whether proper responses were given to the information the plaintiff claimed was missing from the defendants' responses to his comments. Both the inferences derived from disputed facts being resolved in the moving party's favor and the substituting its judgment by providing responses that were not part of the record constitute clear errors of the court.

Both of the issues the plaintiff raised in the missing written comments were raised again in the FEIS comments. This issue addressed cost concerns raised by the defendants prior to the plaintiff submitting oral or written comments. These comments were ignored again in the defendants' responses, and the court failed a second time to determine if these issues were properly responded to in the defendants' responses.

The court has misapplied law with respect to what is required in a complaint (ECF 55 pg 60). According to Rule 8 (Federal Rules of Civil Procedure) all that is required is a "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. No detailed factual allegations are required. Bell Atlantic Corp. v. Twombly 550 U.S. 544 (2007) Denying a claim based on the lack of detailed factual allegations in the complaint is a clear error of the court.

The specific reason the plaintiff got involved in the public participation process was to address issues with his alternatives that prevent it from being a reasonable alternative. There may have been something that the plaintiff missed that needed refinement or there could have been something that the defendants misunderstood about the proposed alternative that made it unreasonable. The plaintiff is fully aware of the evolving alternative concept and wanted to make sure it would not get rejected if some modification could be made to turn it into a reasonable alternative. The expectation was that the plaintiff could learn from any mistakes to determine if reasonable changes could be made to turn it into a reasonable alternative.

The problem with the process was that the plaintiff was given incorrect and incomplete information during his public participation. This met the definition of an arbitrary and capricious process. For example, the 29 July 2010 letter from Lorenzo Bryant (AR2_052060-052062). While the record does not indicate what was sent as part of the letter, it does indicate several reasons.

One of the reasons is the infeasibility of the Red Line sharing the Metro tunnel. One of the missing reports would have indicated that this is due to the infeasibility of installing catenary in the existing tunnel and the incompatibility of LRT with the stations and third rail power. The plaintiff's written comments proposed to use a dual mode railcar that could use catenary outside the tunnel and third rail inside the tunnel. This also contradicts the FEIS because the plaintiff's proposal did not rely entirely on

third rail power (see ECF 55 pg 13) The defendants response is contradicted by the record.

Another reason listed was the travel time and ridership benefits of LRT over BRT. While this is true for all of the alternative 3 options, it is not applicable to the plaintiff's proposal based on the information contained in the record. The record indicates that riders would travel 50% faster on the metro extension and would experience lower numbers of transfers due to the overlap and the quickway mode of BRT.

The third reason given is that the alternative is less compatible with station locations and zoning for transit oriented development. No actual station locations were presented. The majority of the locations are either already built or are coincident with the LPA. The transit oriented development areas denoted in AR1_009270 are all areas that would be directly served by the plaintiff's alternatives. The record indicates that this reason is also directly contradicted by the record.

The court has taken a very narrow view of the public participation process where it is simply based on providing existing documents, but finds no fault when they should have documented the analysis. The law that the CFR is based on indicates that the agency needs to make available advice and information (42 USC 4332(G)) This indicates that the public participation process is not limited to just providing documents.

### Conclusion

The court appears to have clearly errored in a number ways including substituting its judgment for that of the agency, misapplied law and other clear errors related to fact finding. These errors extend to all aspects of the plaintiff's case The decision of the court amounts to a rubber stamping of the NEPA process.

Given the defendants' explanations and the plaintiff's analysis, the plaintiff strongly believes that a reasonable alternative has been proposed. The plaintiff's case is supported by evidence in the record, which contradicts the defendants' limited analysis.

Dated: 27 April 2015

Respectfully submitted

John Cutonilli
1606 Portugal St
Baltimore, MD 21231
jcutonilli@gmail.com
410-675-9444

## Definition of mixed question of law and fact from 9th Circuit

## Standard of Review Guide -Definitions

(http://cdn.ca9.uscourts.gov/datastore/uploads/guides/stand_of_review/I_Definitions.html)

A mixed question of law and fact arises when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule.  See Pullman-Standard v. Swint, 456 U.S. 273, 289 n.19 (1982); see also Khan v. Holder, 584 F.3d 773, 780 (9th Cir. 2009); Suzy's Zoo v. Commissioner, 273 F.3d 875, 878 (9th Cir. 2001) (stating that a mixed question "exists when primary facts are undisputed and ultimate inferences and legal consequences are in dispute"). Mixed questions of law and fact generally require the consideration of legal concepts and the exercise of judgment about the values that animate legal principles.  See Smith v. Commissioner, 300 F.3d 1023, 1028 (9th Cir. 2002).  Mixed questions of law and fact are generally reviewed de novo.  See Mathews v. Chevron Corp., 362 F.3d 1172, 1180 (9th Cir. 2004); but see Haile v. Holder, 658 F.3d 1122, 1125 (9th Cir. 2011) ("We review ... determinations of mixed questions of law and fact for substantial evidence.").

The plaintiff in his motion opposing the motions for summary judgment has tried to articulate this. The historical or primary facts (the administrative record) cannot be disputed, but the interpretation/inferences of these facts leads to the disputes between the plaintiff and the defendants. "Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." (ECF 55 pg 35)

## Requirements for Freedom of Information Act (FOIA) and Public Information Act (PIA)

### FOIA Requests (Federal Government)

According to http://www.foia.gov/how-to.html

Is there a special form I have to use to make a FOIA request? There is no specific form that must be used to make a request. The request simply must be in writing, reasonably describe the information you seek, and comply with specific agency requirements. Most federal agencies now accept FOIA requests electronically, including by web form, e-mail or fax. See *the list of federal agencies* for details about the methods of making a request at each agency and any specific requirements for seeking certain records.

This suggests that specific notification that it is a FOIA request is not required.

### PIA Requests (Maryland State Government)

According to the Maryland Public Information Act Manual (13th Ed.) (October 2014) Page 4-1 (http://www.oag.state.md.us/opengov/Chapter4.pdf)

The PIA envisions a written request. GP § 4-202. However, records predesignated for immediate release under GP § 4-201(c) are to be made available without need for a written request. GP § 4-202(b)(1). Furthermore, the agency may waive the requirement for a written application. GP § 4-202(b)(2). An agency need not and should not demand written requests for inspection of agency documents when there is no question that the public has a right to inspect them. For example, an agency's annual report and the agency's quarterly statistics are clearly open to the public for inspection. In other instances, a written request or the completion of an agency request form may help expedite fulfillment of the request when less commonly requested records are sought. **A request expressing a**

**desire to inspect or copy agency records may be sufficient to trigger the PIA's requirements, even if it does not expressly mention the words "Public Information Act" or cite the applicable sections of the State Government Article.**

- The plaintiff did not mention that his requests were FOIA or PIA related because there does not appear to be any requirement to specifically mention them.

Certificate of Service

I hereby certify that on 27 April 2015 I mailed a copy of this document via US Mail (postage paid) to the following

Jakarra Jenise Jones
Larry Adams
Office of the United States Attorney
36 S Charles St Fourth Fl
Baltimore, MD 21201

Linda DeVuono Strozyk
Office of the Attorney General
State Highway Administration
707 N Calvert St
Baltimore, MD 21202

Tyler L Burgess
US Department of Justice
Environmental And Natural Resources Division
PO Box 7611
Washington, DC 20044

Dated: 27 April 2015                                Respectfully submitted

                                                    John Cutonilli
                                                    1606 Portugal St
                                                    Baltimore, MD 21231
                                                    jcutonilli@gmail.com
                                                    410-675-9444